The CIRCLE SCHOOL,
et al., Plaintiffs,

v.

The Honorable Vicki PHILLIPS,
et al., Defendants.

No. CIV.A. 03–763.

United States District Court,
E.D. Pennsylvania.

July 15, 2003.

Michael K. Twersky, Montgomery McCracken Walker and Rhoads LLP, Philadelphia, PA, for Plaintiffs.

Howard G. Hopkirk, Office of Attorney General, Harrisburg, PA, for Defendants.

## MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

Presently before this Court are the parties' Cross Motions for Summary Judg-

ment. In this case, the Plaintiffs allege that 24 P.S. § 7–771(c)(1) and (c)(2) ("Section 7–771(c)(1)" and "Section 7–771(c)(2)", or collectively, the "Act") violate their constitutional rights. The Act added two subsections to the Pennsylvania Public School Code mandating that schools administer and students recite the Pledge of Allegiance (the "Pledge") or the national anthem (the "Anthem") each morning. Specifically, the Plaintiffs, a combination of private non-religious schools, students, and parents of students, filed this action because they believe that the Act violates, on its face, their First and Fourteenth Amendment rights. The Defendants, Pennsylvania's Secretary of Education and various members of the State Board of Private Academic Schools, argue that the Act is constitutionally sound.

It is certainly desirable to support the voluntary recitation of the Pledge and Anthem as a sign of support for this great country and doing so in a group setting does promote a communal bond. However, the drafters of the Act amended the Public School Code in a way that violates established constitutional law. As discussed below, Section 7–771(c)(1) is facially unconstitutional and, therefore, the Plaintiffs' Motion for Summary Judgment must be granted as to that Section and the Defendants' Motion must be denied as to that Section. Section 7–771(c)(2) survives constitutional scrutiny because it does not violate the Establishment Clause. Therefore, the Plaintiffs' Motion for Summary Judgment must be denied as to that Section and the Defendants' Motion must be granted as to that Section. However, Section 7–771(c)(2) cannot stand alone and, thus, the end result is that this Court must enter a permanent injunction prohibiting the Defendants from enforcing the Act as a whole.

## I. *FACTS*

The facts of this case are not in dispute. On December 9, 2002, the Act, also known as Pennsylvania Act 157 of 2002, was signed into law. The Act, which was to take effect on February 7, 2003, added two subsections to 24 P.S. § 7–771, the Pennsylvania Public School Code. These two new subsections state:

> (c) (1) All supervising officers and teachers in charge of public, private or parochial schools shall cause the Flag of the United States of America to be displayed in every classroom during the hours of each school day and shall provide for the recitation of the Pledge of Allegiance or the national anthem at the beginning of each school day. Students may decline to recite the Pledge of Allegiance and may refrain from saluting the flag on the basis of religious conviction or personal belief. The supervising officer of a school subject to the requirements of this subsection shall provide written notification to the parents or guardian of any student who declines to recite the Pledge of Allegiance or who refrains from saluting the flag.
>
> (2) This subsection shall not apply to any private or parochial school for which the display of the flag, the recitation of the Pledge of Allegiance or the salute of the flag violates the religious conviction on which the school is based.

24 P.S. § 7–771(c). The Act mandates that all schools, except schools whose religious convictions would be violated by the Act, must start the day with either the Pledge or the Anthem. Moreover, all students are required to recite the Pledge or Anthem, unless they decline to do so based upon a religious conviction or personal belief. However, the parents of any students who decline to recite the Pledge or Anthem must be notified in writing of their child's refusal.

The Plaintiffs in this case include: (1) the Circle School ("Circle School"), Project Learn, the Crefeld School ("Crefeld"), the School in Rose Valley ("Rose Valley"), and Upattinas Open Community School and Educational Resource Center ("Upattinas"), all of which are private non-religious academic schools (collectively, the "School Plaintiffs"); (2) James Rietmulder, a teacher and parent at the Circle School and Phyllis Hochberg, a parent of a child who attends Project Learn (collectively, the "Parent Plaintiffs"); and (3) Max Mishkin, a student at a public high school in the Philadelphia suburbs (the "Student Plaintiff").

The Defendants in this action consist of the following officials of the Commonwealth of Pennsylvania, sued in their official capacities: the Honorable Vicki Phillips, Secretary of Education for the Pennsylvania Department of Education; and Jane M. Allis, Bryce Hatch, Marquita Jones, Carolyn Pasanek, Dr. Roberta L. Schomburg, Kim Smith, and Ted Wachtell, all of whom are members of the State Board of Private Academic Schools.

On February 6, 2003, the Plaintiffs filed this action. In their Second Amended Complaint, the Plaintiffs allege that the Act violates their constitutional rights under the First and Fourteenth Amendments. For example, the Student Plaintiff alleges that Section 7–771(c)(1) compels him to express a certain state sponsored message at the expense of his own views in violation of his First Amendment freedom of speech. The Parent Plaintiffs allege that Section 7–771(c)(1) violates their Fourteenth Amendment rights by improperly interfering with their fundamental liberty interest in raising their children and directing the method of their education. The School Plaintiffs allege that Section 7–771(c)(1) violates their right to freedom of expressive association under the First Amendment. The Plaintiffs also argue that Section 7–771(c)(2) violates the First Amendment's Establishment Clause. The Defendants counter the Plaintiffs' arguments by alleging that the Act represents a proper exercise of the Pennsylvania General Assembly's police powers. The Defendants also allege that the Act does not infringe on any of the Plaintiffs' constitutional rights or violate the Establishment Clause.

## II. STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989)(citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (1986)). Further, the non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact,

then summary judgment is proper. *Id.* at 322, 106 S.Ct. 2548; *Wisniewski v. Johns Manville Corp.,* 812 F.2d 81, 83 (3d Cir. 1987). In this case, the parties agree that there are no issues of fact outstanding. Therefore, this case is ripe for the summary judgment determination.

### III. *DISCUSSION*

As mentioned above, the Plaintiffs raise several arguments for why they believe the Act is unconstitutional. Each of the following arguments will be analyzed below. The Student Plaintiff firstly alleges that Section 7–771(c)(1) compels speech because it only provides for students, such as himself, to opt out of reciting the Pledge, but does not allow them to opt out of singing the Anthem. The Student Plaintiff further alleges that the phrase "personal belief," as used in the student opt out provision in Section 7–771(c)(1), is unconstitutionally vague because it gives unfettered discretion to school officials. The Student Plaintiff lastly argues that the parental notification provision of Section 7–771(c)(1) is a viewpoint based restriction on speech that chills student expression and which cannot survive strict scrutiny.

The Parent Plaintiffs allege that Section 7–771(c)(1) violates their Fourteenth Amendment fundamental liberty interest in managing the method of their child's education and cannot withstand strict scrutiny. The Parent Plaintiffs state that they have chosen to send their children to specific private schools so that their children will be exposed to certain values and philosophies espoused by those schools. The Parent Plaintiffs believe that the Act will adversely affect the ability of these private schools to fulfill their missions to the students.

The School Plaintiffs believe that Section 7–771(c)(1) is contrary to their shared educational philosophy that students should be active participants in their education by making choices about learning as opposed to being told how and what to learn. Therefore, the School Plaintiffs argue that imposing forced recitation of the Pledge or Anthem violates their fundamental right to freedom of expressive association under the First Amendment.

Lastly, the Plaintiffs allege that Section 7–771(c)(2) violates the Establishment Clause because it provides the benefit to some religious schools, whose religious convictions would be violated by the Act's provisions, of not having the Act applied to them, while the Act remains applicable to all other religious schools and non-religious schools.

### A. STUDENT PLAINTIFF

**1. The Student Opt Out Provision Applies to Both the Pledge and the Anthem, and Thus the Act Does Not Mandate Unconditional Recitation of the Anthem.**

Section 7–771(c)(1) states that schools "shall provide for the recitation of the *Pledge of Allegiance* or the *national anthem* at the beginning of each school day." 24 P.S. § 7–771(c)(1)(emphasis added). In the next sentence, Section 7–771(c)(1) states that "[s]tudents may decline to recite the *Pledge of Allegiance* and may refrain from *saluting the flag* on the basis of religious conviction or personal belief." *Id.* (emphasis added). The Student Plaintiff argues that because Section 7–771(c)(1) states that students may only opt out of reciting the Pledge and saluting the flag, then it does not allow students to opt out of reciting the Anthem. The Defendants concede that if Section 7–771(c)(1) does not allow students to opt out of the Anthem, the provision would be unconstitutional. (Def.s' Mot. Summ. J., p. 17).

*West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87

L.Ed. 1628 (1943), established that students' First Amendment rights are violated when the state compels them to recite the Pledge, salute the flag, or in some other way declare a belief. 319 U.S. at 631, 642, 63 S.Ct. 1178. Therefore, if the Act does not allow students to opt out of reciting the Anthem, it violates their First Amendment rights. The Defendants allege that singing the Anthem is a form of flag salutation because singing the Anthem is a way "[t]o honor [the flag] formally and ceremoniously." (Def.s' Mot. Summ. J., p. 18, n. 3 (citing the definition of salute found in Webster's New Riverside University Dictionary at p. 1034)).

■ I first note that, " 'the elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' " *Stretton v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 944 F.2d 137, 144 (3d Cir.1991)(quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988)). Here, with the above principle in mind, I agree that singing the Anthem could be considered "saluting the flag" if one used a broad and encompassing definition of the word "salute." I also note that such a broad definition would similarly encompass anything else that could be considered a patriotic salutation such as removing one's hat or standing during the Pledge or Anthem. The drafters of the Act surely understood that in light of *Barnette*, refusing to allow students to opt out of singing the Anthem would have been fatal to the Act. I cannot fathom why the drafters did not simply draft Section 7–771(c)(1) so that students could specifically opt out of both the Pledge and Anthem. It was not necessary for the drafters to use the broad phrase "salute the flag" since Section 7–771(c)(1) only mandates recitation of the Pledge or Anthem, and not other forms of patriotic salutation. Nonetheless, because

I find that the Anthem is one way to salute the flag, the student opt out provision of Section 7–771(c)(1) does not violate *Barnette* as students may opt out of singing the Anthem.

**2. The Phrase "Personal Belief" Is Not Unconstitutionally Vague**

■ The Student Plaintiff also alleges that the phrase "personal belief", used in the student opt out provision of Section 7–771(c)(1), is unconstitutionally vague because it is not defined. The Student Plaintiff argues that by failing to define this phrase, local officials such as teachers or school administrators have unfettered discretion to determine what personal beliefs are acceptable and, thus, whether a student may opt out of reciting the Pledge or Anthem. *See Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir.1997)(stating that "the void-for-vagueness doctrine prevents arbitrary and discriminatory enforcement"). The Defendants argue that the phrase is not vague because it consists of words which have commonly accepted and readily ascertainable meanings. *See* 1 Pa.C.S.A. § 1093(a) (stating that "words and phrases shall be construed according to rules of grammar and according to their common and approved usage"). Quoting Webster's New Riverside University Dictionary, the Defendants argue that "personal" means "of or relating to a particular person" and that "belief" means "[m]ental acceptance of or conviction in the truth or actuality of something." (Def.s' Mot. Summ. J., p. 16). Therefore, the Defendants argue that the phrase "personal belief" has a commonly understood meaning of a "conviction in the truth of something held by a particular person." (*Id.*)

I agree with the Defendants that the phrase "personal belief" has a commonly accepted and readily ascertainable mean-

ing. Moreover, I disagree with the Student Plaintiff that this phrase gives unfettered discretion to local officials to determine what personal beliefs are acceptable. In fact, I believe that such officials lack any discretion in determining proper personal beliefs. Section 7–771(c)(1) does not say that such a belief needs to be rational or reasonable. A student need only state that he or she has a personal belief and that he or she does not wish to recite the Pledge or Anthem. Section 7–771(c)(1) does not leave any room for a local official to question that belief or to attempt to ascertain its validity. Therefore, the phrase "personal belief" used in the student opt out provision of Section 7–771(c)(1) is not unconstitutionally vague.

**3. The Act's Parental Notification Provision Is an Unconstitutional Viewpoint Based Restriction on Students' First Amendment Rights.**

 As stated above, the Supreme Court in *Barnette,* established that students' First Amendment rights are violated when the state compels them to recite the Pledge, salute the flag or in some other way declare a belief. 319 U.S. at 631, 642, 63 S.Ct. 1178. The drafters of the Act have attempted to comply with *Barnette* by mandating that students recite the Pledge or Anthem, but allowing them to opt out of the recitation based on religious conviction or personal belief. 24 P.S. § 7–771(c)(1). However, the Act also specifies that written notification must be sent to the parents of students who refuse to recite the Pledge or Anthem. *Id.* The Student Plaintiff argues that this notification requirement compels or coerces students to recite the Pledge or Anthem by providing a disincentive to opting out. The Defendants claim that the notification provision simply provides for efficient notification of the administration of the Act.

The parental notification provision in Section 7–771(c)(1) is only triggered when a student exercises his or her First Amendment right not to speak. Based on this fact and on the legislative history, it appears that the Act is a viewpoint based regulation which will only survive strict scrutiny if it is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.[1] *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Bd.,* 502 U.S. 105, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). I find that the Defendants' stated reason is not compelling, nor is the provision necessary to serve the stated interest. Therefore, Section 7–771(c)(1) does not survive strict scrutiny and is unconstitutional.

"Deciding whether a particular regulation is content based or content neutral is not always a simple task. [The Supreme Court has] said that the principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys." *Turner Broad. Sys., Inc.,* 512 U.S.

---

1. Even if the provision was content-neutral so that strict scrutiny did not apply, and even if I was to assume that providing for efficient notification of the administration of the Act was an important interest, Section 7–771(c)(1) burdens substantially more speech than necessary to further that interest. I see no reason why a general notification to all parents concerning the implementation of the Act would not suffice to meet the Common- wealth's interest. Such a general notification would burden substantially less speech than individual notices sent only to the parents of students who refused to recite the Pledge or Anthem. Therefore, even under this intermediate level of scrutiny, Section 7–771(c)(1) would be unconstitutional. *Turner Broad. Sys., Inc. v. F.C.C.,* 512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1997).

at 642, 114 S.Ct. 2445 (internal quotation marks omitted). Here, there is evidence that the drafters of the Act intended for the parental notification provision to chill speech by providing a disincentive to opting out of Act. For example, the Act was introduced by Pennsylvania State Representative Allan C. Egolf, after talking with veterans who told him that many schools no longer routinely recite the pledge. (Stipulated Facts in Support of the Motions for Summary Judgment ("Stipulated Facts"), ¶ 10). During debate on the Act in the Pennsylvania House of Representatives, the following comments were made by the Act's sponsor in response to a question posed by a fellow State Representative:

Mr. Vitali: What would be the sanctions for noncompliance with this law of . . . not saying the Pledge of Allegiance?

Mr. Egolf: It would be whatever sanctions the school does for other disciplinary things. If there are other things, which we know the school requires a lot of things that the students must do, and if they do not, then it is the local school's determination how they want to handle it.

Mr. Vitali: So the law itself does not provide any sanctions?

Mr. Egolf: There is no punishment in the bill; nothing specified. It is just like all other requirements in school. Again it is the local school's determination how they want to handle any disciplinary action.

(*Id.* at ¶ 11). Although Mr. Egolf stated that there is no specified punishment in the Act, it is obvious that he views refusal to recite the Pledge or Anthem as something negative for which disciplinary sanctions would be warranted. Therefore, because the Act is only triggered when students engage in expressive activities and because of the comments made by the Senator who introduced the Act, it

appears that strict scrutiny is appropriate.

As stated above, Section 7–771(c)(1) cannot withstand strict scrutiny. First, efficient notification of the administration of the Act is not so compelling of an interest to allow the provision to chill students' speech. There can be no doubt that the parental notification provision of Section 7–771(c)(1) would chill the speech of certain students who would involuntarily recite the Pledge or Anthem rather than have a notice sent to their parents. Second, the individualized notification is not necessary to promote the stated interest. There is no reason why a generalized notice to all parents would not be completely sufficient to advance the Commonwealth's interest. Such a generalized notice could inform all parents that "from this day forth, we will mandate the recitation of the Pledge or Anthem. However, your son or daughter may opt out of reciting the Pledge or Anthem based on religious conviction or personal belief." It is not necessary to inform parents about the Act only after their child has refused to recite the Pledge or Anthem. Moreover, "[u]nder *[Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)] [ ] regulation of student speech is generally permissible only when the speech would substantially disrupt or interfere with the work of the school or the rights of other students." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 211 (3d Cir.2001). The Defendants have not provided any argument that refusing to recite the Pledge or Anthem would be substantially disruptive to the schools.

The Defendants also argue that the parental notification provision is not punitive because in cases dealing with sexual predator laws such as Megan's Law, and in cases dealing with abortion laws, courts

have found that some notification provisions were not punishments. The comparison of the parental notification provision here and the notification requirements in Megan's Law or in abortion laws is not appropriate. First, in *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997), cited by the Defendants, the precise issue was "whether Megan's Law notification constitutes 'punishment' for purposes of the Ex Post Facto and Double Jeopardy Clauses punishment." 119 F.3d at 1094. That issue is not present in this case. Also, under New Jersey's Megan's Law, N.J.S.A. 2C:7–1 to 7–11, at issue in *E.B. v. Verniero*, the purpose of the registration of sex offenders and the notification of the public was to combat the "danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children." N.J.S.A. 2C:7–1(a). That is a far more compelling interest than simply providing efficient notification of the fact that a student refused to recite the Pledge or Anthem. Moreover, under Megan's Law, notification is only distributed after an individual has committed certain sexual crimes. Here, the Defendants do not claim that refusal to recite the Pledge or Anthem is a crime.

Second, in the abortion law cases cited by the Defendants, notification to the parents of their child's intent to have an abortion could be by-passed via judicial action. *See e.g. Lambert v. Wicklund*, 520 U.S. 292, 293, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997). In the present case, no such judicial by-pass exists. The purpose of allowing minors to by-pass notification to their parents of their intent to have an abortion is to protect the minor's constitutional rights. *Id.* at 295, 117 S.Ct. 1169. Based on this fact, the abortion cases are readily distinguishable from the present case. Parental notification under the abortion laws may be by-passed, whereas under the Act, there is no by-pass for the parental notification. Therefore, the students' constitu-

tional rights are afforded less protection under the Act than the minors' rights under the abortion laws.

The words of the Supreme Court in *Barnette* are as appropriate now as they were sixty years ago:

> To believe that patriotism will not flourish if patriotic ceremonies are voluntary and spontaneous instead of a compulsory routine is to make an unflattering estimate of the appeal of our institutions to free minds. We can have intellectual individualism and the rich cultural diversities that we owe to exceptional minds only at the price of occasional eccentricity and abnormal attitudes. When they are so harmless to others or to the State as those we deal with here, the price is not too great. But freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.
>
> If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein. If there are any circumstances which permit an exception, they do not now occur to us.

*Barnette*, 319 U.S. at 641–642, 63 S.Ct. 1178. "Here [ ] we are dealing with a compulsion of students to declare a belief. [The students] are not merely made acquainted with the flag salute so that they may be informed as to what it is or even what it means. The issue here is whether this slow and easily neglected route to aroused loyalties constitutionally may be short-cut by substituting a compulsory salute and slogan." *Barnette*, 319 U.S. at 631, 63 S.Ct. 1178. The parental notification provision in Section 7–771(c)(1) offers

a disincentive for students to opt out of reciting the Pledge or the Anthem and thus it coerces students into reciting a state sponsored message. Therefore, as in *Barnette*, Section 7–771(c)(1) cannot survive strict scrutiny and, thus, is unconstitutional.

### B. PARENT PLAINTIFFS

**1. The Act Unconstitutionally Infringes on the Parent Plaintiffs' Fourteenth Amendment Fundamental Liberty Interest to Choose the Method Used to Educate Their Children.**

■ The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has "long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, guarantees more than fair process. The Clause also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (internal citations and quotation marks omitted). It is well established that parents have a fundamental liberty interest in directing the upbringing and education of their children. *Id.* (stating that, "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court")(citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) and *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)).

The Parent Plaintiffs allege that they have chosen to send their children to specific private schools so that their children will be exposed to certain values and philosophies espoused by those schools including the fostering of individuality, self-discovery, and self-learning. The Parent Plaintiffs believe that Section 7–771(c)(1), by prescribing that the Pledge or Anthem be recited every morning, undermines certain educational messages that they want their children to receive. The Parent Plaintiffs fear that the Act will adversely affect the ability of the schools to which they have chosen to send their children, to fulfill the schools' missions to the students.

■ Because the right at issue is a fundamental right, strict scrutiny must be utilized in determining Section 7–771(c)(1)'s constitutionality. *Troxel*, 530 U.S. at 80, 120 S.Ct. 2054 (Thomas, J., concurring). Therefore, Section 7–771(c)(1) will only be upheld if it: (1) serves a compelling governmental interest; (2) is narrowly tailored to achieve that interest; and (3) is the least restrictive means of advancing that interest. *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 251 (3d Cir.2003). Here, the Defendants argue that the Commonwealth has a compelling interest in providing a full educational experience for children, including the teaching of patriotism and civics which are important for the development of an educated and responsible citizenry. We agree that this is a compelling interest. However, Section 7–771(c)(1) is not narrowly tailored to achieve, or the least restrictive means of advancing, this interest. Therefore, Section 7–771(c)(1) is unconstitutional.

The Plaintiffs argue that rote recitation of the Pledge and Anthem do not *teach* anything and, thus, Section 7–771(c)(1) does not further the Defendants' stated interest at all. The Plaintiffs further allege that the Pennsylvania Public School Code already provides a less restrictive means of advancing the Commonwealth's interest in teaching patriotism and civics

by allowing schools to "offer at least one full period per week, for the purpose of affirming and developing allegiance to and respect for the Flag of the United States of America, and for the promoting of a clear understanding of our American way of life." 24 P.S. § 7–771(d). I agree with the Plaintiffs that recitation of the Pledge or Anthem is not the least restrictive means of promoting the teaching of civics. I further agree that a class which teaches the importance of civics and the students' roles as citizens is a more narrowly tailored way in which to further the Defendants' stated interest. Therefore, Section 7–771(c)(1) is not narrowly tailored to the intended interest, nor is it the least restrictive means of teaching patriotism and civics. As a result, Section 7–771(c)(1) fails to survive strict scrutiny and is unconstitutional.

## C. SCHOOL PLAINTIFFS

### 1. The Act Violates the School Plaintiffs' First Amendment Right to Freedom of Expressive Association.

■ The School Plaintiffs allege that Section 7–771(c)(1) infringes on their freedoms of association and expression embodied in the First Amendment by mandating that private schools, such as the School Plaintiffs, begin each school day by reciting the Pledge or Anthem. The School Plaintiffs argue that the first Amendment prohibits a state from burdening a private organization's expressive activity by imposing regulations that "impair the ability of the group to express those views, and only those views that it intends to express." *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). The School Plaintiffs further argue that because Section 7–771(c)(1) forces private schools to express certain views by requiring the recitation of the Pledge or Anthem, which are contrary to the School Plaintiffs' educational philosophies, the Act restricts their right to engage in only the expressive activity in which they wish to engage.

■ In *Dale,* the Supreme Court struck down a law requiring the Boy Scouts of America (the "Boy Scouts") to accept homosexuals. *Id.* at 656, 120 S.Ct. 2446. The Court found that homosexuality was inconsistent with the values that the Boy Scouts wished to instill and that the State of New Jersey could not force them to accept homosexuals. *Id.* at 654–655, 120 S.Ct. 2446. The Court explained that if the State of New Jersey required the Boy Scouts to accept homosexuals, the State would be compelling the Boy Scouts to express the view that homosexuality was acceptable. *Id.* at 653, 120 S.Ct. 2446. Because this view ran contrary to the Boy Scouts' philosophy, such compulsion would violate the Boy Scouts' First Amendment freedom of expressive association. *Id.* at 656, 120 S.Ct. 2446. The Court held that:

implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas. Government actions that may unconstitutionally burden this freedom may take many forms, one of which is intrusion into the internal structure or affairs of an association like a regulation that forces the group to accept members it does not desire.

*Id.* at 647–648, 120 S.Ct. 2446 (internal citations and quotation marks omitted). "But the freedom of expressive association, like many freedoms, is not absolute. [The Supreme Court has] held that the freedom could be overridden by regulations

adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* at 648, 120 S.Ct. 2446. Therefore, strict scrutiny applies to this right.

■ The Supreme Court in *Dale* held that "associations do not have to associate for the 'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment. An association must merely engage in expressive activity that could be impaired in order to be entitled to protection." *Id.* at 653, 120 S.Ct. 2446. In the present case, the School Plaintiffs have the stated mission of instilling values in children through instruction and activities. (Stipulated Facts, Ex. D (The Circle School Philosophy); Ex. E (Project Learn Philosophy)); Ex F (Crefeld–The School and Its Philosophy); Ex. G (Mission Statement of Rose Valley; and Ex. H (About Upattinas)). As stated in *Dale,* it "seems indisputable that an association that seeks to transmit such a system of values engages in expressive activity." *Dale,* 530 U.S. at 650, 120 S.Ct. 2446 (stating that the general mission of the Boy Scouts is to instill values in young people).

Moreover, the School Plaintiffs' values include advocating independent thought and freedom of expression among their students. For example, the Circle School Philosophy states its belief "in the wisdom of each person to know what's best for him or her" and that the Circle School "honors the child person's wisdom in making daily choices." (Stipulated Facts, Ex. D., p. 1–2). Project Learn's Philosophy and Goals states that "[s]tudents differ in how they learn and in what they ought to learn. Any educational program must be responsive to their individual differences." (*Id.,* Ex. E., p. 1). Rose Valley finds that "[e]xperiences in self-direction, making choices

and taking risks help children become independent, life-long learners." (*Id.,* Ex. G). The School Plaintiffs believe that the Act's requirements that they must administer and the students must recite the Pledge or Anthem, runs contrary to these values. *See Dale,* 530 U.S. at 653, 120 S.Ct. 2446 (stating that "[a]s we give deference to an association's assertions regarding the nature of its expression, we must also give deference to an association's view of what would impair its expression").

The School Plaintiffs allege that Section 7–771(c)(1) requires them to affirm and have their students affirm the Commonwealth's view on patriotism in the manner prescribed by the Commonwealth, impairing their ability to express certain values and philosophies which they wish to express. For example, the School Plaintiffs allege that the requirement forces them to conduct a group recitation of the Pledge or Anthem and eliminates the ability of the students to make a choice, without coercion, whether to recite the Pledge or Anthem. Therefore, the School Plaintiffs believe the requirement runs contrary to their stated value of allowing the students to make individualized choices about their education.

The Defendants counter by arguing that the Act does not limit private schools' right to free expression and, thus, the Act is constitutional. Specifically, the Defendants argue that the Act does not prevent "private schools from disavowing the policy underlying the Act and from making it clear to their students that they do not share or endorse the viewpoint of the Commonwealth." (Def.s' Mot. Summ. J., p. 31). The Defendants allege that "private schools retain not only the right, but the capability to make a general disclaimer before [the recitation of the Pledge or Anthem] and may teach their own message

regarding the wisdom of the Commonwealth's policy." (*Id.* at 33). However, in *Dale,* the Court did not hold that the Boy Scouts were required to accept homosexuals because they could make it clear that they do not endorse New Jersey's homosexual inclusive view. On the contrary, the Court held that New Jersey could not force the Boy Scouts to accept homosexuals because such a requirement would interfere with their beliefs. *Dale* 530 U.S. at 654–655, 120 S.Ct. 2446. Therefore, the Defendants' argument fails.

■■■ I agree that Section 7–771(c)(1) unconstitutionally interferes with the School Plaintiffs' ability to express their values and forces them to espouse the Commonwealth's views. This is not to say that the Commonwealth may never regulate private schools in such a way that the schools' freedom of expression is implicated. It is well known that states have an interest in reasonably regulating schools and their basic requirements. *Pierce,* 268 U.S. at 534, 45 S.Ct. 571; *Meyer,* 262 U.S. at 402, 43 S.Ct. 625. Such regulations could infringe on First Amendment freedoms. However, as stated above, when a regulation does infringe on such a freedom, the court must determine if that regulation passes strict scrutiny. *See Williams v. Rhodes,* 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)(stating that "only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms")(in-

ternal quotation marks omitted). As stated in Section III. B. 1. of this Opinion, Section 7–771(c)(1) is not narrowly tailored to the Defendants' stated interest in the teaching of patriotism and civics and the Defendants' goal may be achieved through less restrictive means. Therefore, strict scrutiny has not been met, and Section 7–771(c)(1) is unconstitutional.[2]

### D. THE ACT DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE

■■■ Section 7–771(c)(2) states that the Act does not apply "to any private or parochial school for which the display of the flag, the recitation of the Pledge of Allegiance or the salute of the flag violates the religious conviction on which the school is based." 24 P.S. § 7–771(c)(2). The Plaintiffs argue that Section 7–771(c)(2) violates the Establishment Clause because it provides the benefit to some religious schools, whose religious convictions would be violated by the Act's provisions, of not having the Act applied to them, while the Act remains applicable to all other religious schools and non-religious schools. The Plaintiffs argue that the Establishment Clause "prohibits, at the very least, legislation that constitutes an endorsement of one or another set of religious beliefs or of religion generally." *Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 8–9, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). The Plaintiffs further allege that "[a] proper respect for both the Free Exercise and the Establish-

---

**2.** The School Plaintiffs also argue that they, like the Parent Plaintiffs, have a fundamental liberty interest in directing the education of their students. In support of this argument the School Plaintiffs primarily cite *Meyer,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042, and *Pierce,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070. I recognize that the interests of the School Plaintiffs and the Parent Plaintiffs are heavily intertwined. Moreover, the Supreme Court in *Meyer* recognized that a teacher's

right to teach German and the parents' right to engage the teacher to instruct their children were within the Fourteenth Amendment's liberty interest. *Meyer,* 262 U.S. at 400, 43 S.Ct. 625. Therefore, it would appear that the School Plaintiffs do indeed have such a liberty interest. However, there is no indication whether this interest is fundamental. Nevertheless, because the Act violates the School Plaintiffs' right to expressive association, it is unnecessary to rule on this claim.

ment Clauses compels the State to pursue a course of 'neutrality' toward religion, favoring neither one religion over others nor religious adherents collectively over nonadherents." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet,* 512 U.S. 687, 696, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994) (internal citations and quotation marks omitted). The Plaintiffs argue that because the Act is not applicable to some religious schools such as Quaker and Mennonite schools, while being applicable to all other schools, the Act constitutes an endorsement of those religious sects. As a result, the Plaintiffs allege that the Commonwealth has not pursued a course of neutrality toward religion.

However, the Supreme Court in *Board of Education of Kiryas Joel Village School District,* also stated that:

we do not deny that the Constitution allows the State to accommodate religious needs by alleviating special burdens. Our cases leave no doubt that in commanding neutrality the Religion Clauses do not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice. Rather, there is ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference, government may (and sometimes must) accommodate religious practices and may do so without violating the Establishment Clause.

*Id.* at 705–706, 114 S.Ct. 2481 (internal citations and quotation marks omitted). Here, Section 7–771(c)(2) simply accommodates the needs of certain religious sects by alleviating a special burden. The Act, in this regard, shows a benevolent neutrality that permits religious exercise to exist without state sponsorship.

Moreover, the three cases cited by Plaintiffs in support of their argument are each distinguishable from the present case for the same reason. First, the Plaintiffs cite *Texas Monthly, Inc.,* 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1, to support their argument. In *Texas Monthly, Inc.,* the Supreme Court struck down a law which exempted from sales tax literature that promulgated the teachings of religious faiths because "[e]very tax exemption constitutes a subsidy that affects nonqualifying taxpayers, forcing them to become indirect and vicarious donors." 489 U.S. at 14, 109 S.Ct. 890 (internal quotation marks omitted). The Court held that "when government directs a subsidy exclusively to religious organizations that is not required by the Free Exercise Clause and that [ ] burdens nonbeneficiaries markedly ... it provides unjustifiable awards of assistance to religious organizations and cannot but convey a message of endorsement to slighted members of the community." *Id.* at 15, 109 S.Ct. 890 (internal citations and quotation marks omitted). In the present case, non-beneficiaries are not burdened in the slightest by the fact that Section 7–771(c)(2) exempts certain religious schools from the Act, nor are any non-beneficiaries required to indirectly financially support a subsidy to these religious schools.

Second, the Plaintiffs cite *Board of Education of Kiryas Joel Village School District,* 512 U.S. 687, 114 S.Ct. 2481, 129 L.Ed.2d 546. In that case, the Supreme Court found that a statute creating a special school district with boundaries drawn to include only property owned and inhabited by practitioners of a strict form of Judaism departed from the First Amendment's requirement of neutrality by "delegating the State's discretionary authority over public schools to a group defined by its character as a religious community, in a legal and historical context that gives no assurance that governmental power has been or will be exercised neutrally." 512 U.S. at 696, 114 S.Ct. 2481. The Court

further found that "[a]uthority over public schools belongs to the State, . . . and cannot be delegated to a local school district defined by the State in order to grant political control to a religious group." *Id.* at 698, 114 S.Ct. 2481. In the present case, Section 7–771(c)(2) does not delegate any of the Commonwealth's authority or political power to certain religious schools and, therefore, there has been no "fusion of governmental and religious functions by delegating important, discretionary governmental powers to religious bodies, thus impermissibly entangling government and religion." *Id.* at 696–697, 114 S.Ct. 2481 (internal quotation marks omitted).

Third, the Plaintiffs cite *Estate of Thornton v. Caldor, Inc.,* 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985). In *Estate of Thornton,* the Supreme Court struck down a law that "decreed that those who observe a Sabbath any day of the week as a matter of religious conviction must be relieved of the duty to work on that day, no matter what burden or inconvenience this imposes on the employer or fellow workers." 472 U.S. at 708–709, 105 S.Ct. 2914. The Court reasoned that the statute:

> impose[d] on employers and employees an absolute duty to conform their business practices to the particular religious practices of the employee by enforcing observance of the Sabbath the employee unilaterally designates. The State thus commands that Sabbath religious concerns automatically control over all secular interests at the workplace; the statute takes no account of the convenience or interests of the employer or those of other employees who do not observe a Sabbath. The employer and others must adjust their affairs to the command of the State whenever the statute is invoked by an employee.

*Id.* at 709, 105 S.Ct. 2914. The Court found that the statute had a primary effect which impermissibly advanced a particular religious practice because the "unyielding weighting in favor of Sabbath observers over all other interests contravenes a fundamental principle of the Religion Clauses, so well articulated by Judge Learned Hand: 'The First Amendment . . . gives no one the right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities.' " *Id.* at 710, 105 S.Ct. 2914 (quoting *Otten v. Baltimore & O.R. Co.,* 205 F.2d 58, 61 (2d Cir.1953)). In the present case, the accommodation given in Section 7–771(c)(2) does not affect anyone else, nor does it force some to conform their conduct to other's religious necessities.

In each of these three cases cited by the Plaintiffs, the government gave a benefit to certain religious groups which resulted in a physical loss of money, power, or control to others. In the present case, Section 7–771(c)(2)'s accommodation offered to some religious schools does not take away anything from the Plaintiffs. Whether certain religious schools are exempt from the Act does not affect the Plaintiffs at all. The Commonwealth has a compelling interest in accommodating religious practice so that its actions do not violate the Free Exercise Clause. Moreover, Section 7–771(c)(2) is narrowly tailored to this interest. Therefore, Section 7–771(c)(2) is a legitimate accommodation to certain religious schools and does not violate the Establishment Clause. However, I do realize that this finding is relatively academic, since Section 7–771(c)(2) cannot stand alone without Section 7–771(c)(1), and as discussed above, Section 7–771(c)(1) is unconstitutional.

### E. ATTORNEY'S FEES

The Plaintiffs have also requested attorney's fees pursuant to 42 U.S.C. § 1988. Section 1988(b) states in pertinent part: "[i]n any action or pro-

ceeding to enforce a provision of section[ ] ... 1983 ... of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The Plaintiffs have brought all of their claims under Section 1983. (2nd Amend. Cmplt., ¶ 36). Therefore, the use of Section 1988 is appropriate. Moreover, "although § 1988(b) expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." *Truesdell v. Philadelphia Hous. Auth.,* 290 F.3d 159, 163 (3d Cir.2002)(internal quotation marks omitted).

The Supreme Court has given a " 'generous formulation to the term prevailing party stating that plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983))(internal quotation marks omitted). Specifically, the test in the Third Circuit "of whether a person is a prevailing party is whether he essentially succeeds in obtaining the relief he seeks in his claims on the merits." *Morrison v. Ayoob,* 627 F.2d 669, 671 (3d Cir.1980)(internal quotation marks omitted). "Under § 1988 the focus is on the relief received rather than any formal procedural labels." *Id.* Furthermore, it does not matter that the Defendants were sued only in their official capacities. It is well established that the Eleventh Amendment is not a bar to an award of attorney's fees under Section 1988. *Id.* at 672.

The Plaintiffs have succeeded in obtaining the relief that they sought. The Plaintiffs are entitled to a permanent injunction prohibiting the Defendants from enforcing the Act because of Section 7–771(c)(1)'s

unconstitutionality. It is of no consequence that the Plaintiffs' Motion must be denied as to Section 7–771(c)(2), as this decision has no bearing on the ultimate injunctive relief requested. Therefore, as the prevailing party, the Plaintiffs are entitled to attorney's fees.

## IV. CONCLUSION

First, the student opt out provision in Section 7–771(c)(1) applies to both the Pledge and the Anthem and, therefore, the Act does not compel students to sing the Anthem in violation of *Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628. Second, the phrase "personal belief", as used in Section 7–771(c)(1)'s student opt out provision, has a common and readily ascertainable meaning and gives no discretion to school officials regarding whether a stated personal belief is adequate. Therefore, the phrase is not unconstitutionally vague. Third, the parental notification provision in Section 7–771(c)(1) is a viewpoint based restriction on speech that chills student expression and cannot survive strict scrutiny. Fourth, Section 7–771(c)(1) violates the Parent Plaintiffs' Fourteenth Amendment fundamental liberty interest in managing the method of their child's education and cannot withstand strict scrutiny. Fifth, Section 7–771(c)(1) violates the School Plaintiffs' fundamental right to freedom of expressive association under the First Amendment because it unreasonably interferes with the values and philosophies they wish to instill in their students. Last, Section 7–771(c)(2) is a legitimate accommodation to certain religious schools and does not violate the Establishment Clause.

In conclusion, the Plaintiffs' Motion for Summary Judgment regarding Section 7–771(c)(1) must be granted and the Defendants' Motion regarding this Section must be denied. However, because Section 7–

771(c)(2) does not violate the Establishment Clause and is constitutional, the Defendants' Motion regarding this Section must be granted and the Plaintiffs' Motion regarding this Section must be denied. Nonetheless, because Section 7–771(c)(2) cannot stand alone, I must enter a permanent injunction prohibiting the Defendants from enforcing the Act.

An appropriate Order follows.

### ORDER

**AND NOW,** this 15th day of July, 2003, upon consideration of the Defendants' Motion for Summary Judgment (Doc. No. 22), the Plaintiffs' Motion for Summary Judgment (Doc. No. 23), the Responses thereto, and the Oral Arguments held on June 9, 2003, it is hereby ORDERED that:

(1) the Plaintiffs' Motion is GRANTED in part and DENIED in part. 24 P.S. § 7–771(c)(1) violates the First and Fourteenth Amendments to the Constitution and, thus, the portion of the Plaintiffs' Motion dealing with this Section is GRANTED. However, 24 P.S. § 7–771(c)(2) is constitutional and does not violate the Establishment Clause and, thus, the portion of the Plaintiffs' Motion dealing with this Section is DENIED; and

(2) the Defendants' Motion is GRANTED in part and DENIED in part. 24 P.S. § 7–771(c)(1) violates the First and Fourteenth Amendments to the Constitution and, thus, the portion of the Defendants' Motion dealing with this Section is DENIED. However, 24 P.S. § 7–771(c)(2) is constitutional and does not violate the Establishment Clause and, thus, the portion of the Defendants' Motion dealing with this Section is GRANTED.

It is hereby further ORDERED that the Plaintiffs' request for a permanent injunction is GRANTED and the Defendants are prohibited from enforcing the Act. Pursu-

ant to 42 U.S.C. § 1988, the Plaintiffs are entitled to payment of their attorneys' fees by the Defendants. Accordingly, the Plaintiffs shall submit their petition for such fees within thirty (30) days of the date of this Order.