

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-2004

# Circle Sch v. Atty Gen PA

Precedential or Non-Precedential: Precedential

Docket No. 03-3285

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Circle Sch v. Atty Gen PA" (2004). *2004 Decisions.* Paper 365.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/365

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 03-3285
_____

THE CIRCLE SCHOOL; JAMES
RIETMULDER; MAXWELL S.
MISHKIN, by His Parents and Next
Friends Jeremy and Barbara Mishkin;
PHYLLIS HOCHBERG; PROJECT
LEARN, a School Community;
UPATTINAS SCHOOL AND
RESOURCE CENTER; THE SCHOOL
IN ROSE VALLEY; THE CREFELD
SCHOOL

v.

THE HONORABLE GERALD J.
PAPPERT*, Attorney General for the
Commonwealth of Pennsylvania; THE
HONORABLE VICKI PHILLIPS,
Secretary of Education Designee for the
Commonwealth of Pennsylvania; JANE
M. ALLIS, Member, State Board of
Private Academic Schools; DENISE
BIONDO, Member, State Board of
Private Academic Schools; BRYCE
HATCH, Member, State Board of
Private Academic Schools; MARQUITA
JONES, Member, State Board of Private
Academic Schools; CAROLYN
PASANEK, Member, State Board of
Private Academic Schools; ROBERTA
L. SCHOMBURG, DR., Member, State
Board of Private Academic Schools;
KIM SMITH, Member, State Board of
Private Academic Schools; TED

WACHTEL, Member, State Board of
Private Academic Schools

Vicki Phillips; Jane M.
Allis; Denise Biondo; Bryce
Hatch; Marquita Jones;
Carolyn Pasanek; Dr.
Roberta L. Schomburg; Kim
Smith; Ted Wachtel,
                    Appellants

*(Amended per Court Order
dated 3/11/04)
_____

On Appeal from the United States
District Court for the Eastern District of
Pennsylvania
(D.C. Civil No. 03-cv-00763)
District Judge:  Hon. Robert F. Kelly
_____

Argued March 9, 2004

Before:  SLOVITER and NYGAARD,
Circuit Judges, and OBERDORFER,
District Judge[*]

(Filed August 19, 2004)
_____

Gerald J. Pappert
    Attorney General
Howard G. Hopkirk    (Argued)
    Deputy Attorney General

_____

[*]    Hon. Louis F. Oberdorfer, Senior
Judge, United States District Court for
the District of Columbia, sitting by
designation.

Amanda L. Smith
    Deputy Attorney General
Calvin R. Koons
    Senior Deputy Attorney General
John G. Knorr, III
    Chief Deputy Attorney General
Office of Attorney General
Appellate Litigation Section
Harrisburg, PA 17120

    Attorneys for Appellants

Joyce S. Meyers
Michael K. Twersky  (Argued)
Robert P. Blood
Montgomery, McCracken, Walker &
    Rhoads, LLP
Philadelphia, PA 19109

    Attorneys for Appellees

Stefan Presser
American Civil Liberties Foundation of
    Pennsylvania
Philadelphia, PA 19107

    Attorney for Appellees

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Pennsylvania Act 157 of 2002 ("Act 157" or the "Act"), codified as 24 Pa. Cons. Stat. Ann. § 7-771(c), mandates that all public, private, and parochial schools within the Commonwealth display the national flag in every classroom and provide for the recitation of the Pledge of Allegiance or the national anthem at the beginning of each school day. Like similar statutes in other states, Act 157 allows private and parochial schools to opt out of its requirements on religious grounds, and gives students the option of refraining from participating in the recitation and saluting the national flag on religious or personal grounds. § 7-771(c)(1)-(2).[1] However, it also requires school supervising officials to notify, in writing, parents or guardians of those students who have declined to join in the recitation or salute the flag. § 7-771(c)(1).

We hold that the parental notification provision of the Act violates the school students' First Amendment right to free speech and is therefore unconstitutional. We also hold that certain of the Act's remaining provisions violate private schools' First Amendment right to free expressive association. We will therefore affirm the District Court's judgment.

### BACKGROUND

24 Pa. Cons. Stat. Ann. § 7-771(c)

---

[1]    Although the plain language of Section 7-771(c)(1) only allows students to opt out of reciting the Pledge of Allegiance and saluting the flag, the District Court held that the phrase "saluting the flag" also encompasses the singing of the national anthem. The Circle School v. Phillips, 270 F. Supp. 2d 616, 622 (E.D. Pa. 2003). Neither party challenges that holding here.

reads as follows:

(1) All supervising officers and teachers in charge of public, private or parochial schools shall cause the Flag of the United States of America to be displayed in every classroom during the hours of each school day and shall provide for the recitation of the Pledge of Allegiance or the national anthem at the beginning of each school day. Students may decline to recite the Pledge of Allegiance and may refrain from saluting the flag on the basis of religious conviction or personal belief. The supervising officer of a school subject to the requirements of this subsection shall provide written notification to the parents or guardian of any student who declines to recite the Pledge of Allegiance or who refrains from saluting the flag.

(2) This subsection shall not apply to any private or parochial school for which the display of the flag, the recitation of the Pledge of Allegiance or the salute of the flag violates the religious conviction on

which the school is based.

§ 7-771(c).

Subsection one requires all Pennsylvania schools to conduct a recitation of the Pledge of Allegiance or the national anthem at the beginning of each school day. Students may decline such recitation for religious or personal reasons, but their refusal would be reported to their parents through written notification from their schools. Subsection two allows private and parochial schools to decline displaying the national flag, reciting the Pledge of Allegiance, or saluting the flag on religious grounds.

Prior to the final passage of Act 157, which amended Section 7-771(c) to its current form, Representative Allan C. Egolf of the Pennsylvania House of Representatives, who sponsored and introduced the bill in the Commonwealth's House, stated that under previously-existing provisions, schools were not required to have a flag in every classroom and recite the Pledge of Allegiance or the national anthem every day:

This bill would require [that every school day is started with the Pledge or national anthem.] It is not a requirement that [the students] do the pledge, but it is a requirement that the school offer it. Current law does not require that.

App. at 78. Responding to another representative's question regarding

3

students' refusal to participate in reciting the Pledge or anthem, Egolf further stated that the only way a student could do so, under the Act, would be to get the permission of his or her parents:

> Mr. VITALI. Now, this bill, as I understand it or as I read it quickly, if a student did not want to recite the Pledge of Allegiance, the only way he could not do that would be to get his parents' permission not to do it?

> Mr. EGOLF. Right. Maybe for religious reasons or whatever, so if the parents want to– Apparently, there are some religions that do not do the pledge, so they could opt their child out of that.

> . . . .

> Mr. VITALI. So if you had a [high school] senior who, for whatever misguided or exploratory reasons, decided he simply did not want to do this and his parent would not give him permission not to, he could be compelled to say the Pledge of Allegiance?

> Mr. EGOLF. Well, it is offered for them. I assume . . . it is up to the classroom teacher. Just like anything else, if the student does not want to participate in class, the teachers do whatever they can to get them to participate, so I would assume they would do the same here, unless the parents have actually opted the student out of it. But, you know, that is up to them locally. You cannot make a person say something. I suppose, but if they stand there and do not create a disturbance, that is up to the teacher.

> Mr. VITALI. What would be the sanctions for noncompliance . . . .

> Mr. EGOLF. It would be whatever sanctions the school does for other disciplinary things. . . . [I]t is the local school's determination how they want to handle it.

> Mr. VITALI. So the law itself does not provide any sanctions?

> Mr. EGOLF. There is no punishment in the bill; nothing specified. It is just like all the other requirements in school. Again, it is the local school's determination how they want to handle any disciplinary action.

4

App. at 78-79.

Plaintiffs, a public high school student, two parents of private school students, and several non-religious private schools, claim that the Act, by compelling schools to hold, and students to participate in, recitations of the Pledge of Allegiance or the national anthem and salutations of the flag, on its face violates the First and Fourteenth Amendments. The student plaintiff, Maxwell Mishkin, asserts that the Act violates his First Amendment free speech rights because the plain language of Section 7-771(c)(1) allows him to opt out of reciting the Pledge of Allegiance, but not of the singing of the national anthem. App. at 44. He also argues that the parental notification portion of the Act serves as a deterrent to his exercise of free expression rights not to participate in such recitations, and that the phrase "personal belief," used in Section 7-771(c)(1) as the permissible ground for students to decline reciting the Pledge of Allegiance and saluting the flag, is unconstitutionally vague. App. at 45-46. The parental plaintiffs, James Rietmulder and Phyllis Hochberg, claim that the Act violates their fundamental liberty interest under the Fourteenth Amendment to choose the way in which their children are educated because it interferes with the missions and educational philosophies of the private schools in which they choose to enroll their children. App. at 43-44. The private school plaintiffs, the Circle School, Project Learn, the Crefeld School, the School in Rose Valley, and Upattinas School and Resource Center, argue that the Act

violates their freedom to expressive association by requiring them to hold recitations that contradict their educational philosophies. App. at 42-43. Finally, all plaintiffs contend that Section 7-771(c)(2), as amended by the Act, violates the First Amendment Establishment Clause by privileging certain religious schools (those that do not have to hold recitations because of their religious beliefs) over others. App. at 44.

Plaintiffs filed their facial challenge to the Act in the District Court for the Eastern District of Pennsylvania and named various Commonwealth officials as defendants. The Commonwealth, responding to plaintiffs' constitutional claims, contends that the Act does allow students to opt out of the singing of the national anthem; that the phrase "personal belief" is not overly vague; and that the parental notification provision is administrative rather than punitive in nature. More broadly, it argues that the Commonwealth has a compelling interest in providing a full educational experience for children, including the teaching of patriotism and civics; that any school can, while offering the recitations every school day, disavow the government policy underlying the requirement and make a general disclaimer; and that the Act does not violate the Establishment Clause by providing legitimate and neutral accommodations to certain religious schools.

The parties, after jointly stipulating to certain facts, filed cross motions for summary judgment. The District Court, in

5

an order and opinion dated July 15, 2003, granted in part, and denied in part, both motions. Specifically, it ruled in defendants' favor that Section 7-771(c)(1) does allow students to opt out of the singing of the national anthem and does not violate the First Amendment on that ground; that "personal belief" as used in Section 7-771(c)(1) has a commonly accepted and readily ascertainable meaning and is therefore not unconstitutionally vague; and that Section 7-771(c)(2) does not violate the Establishment Clause because it is narrowly tailored to serve the Commonwealth's compelling interest in accommodating religious practices. The Circle School v. Phillips, 270 F. Supp. 2d 616, 621-23, 629-31 (E.D. Pa. 2003). These findings are not at issue in this appeal.

The District Court, however, ruled that the parental notification clause in Section 7-771(c)(1) is a viewpoint-based regulation that operates to chill students' speech. 270 F. Supp. 2d at 623-26. It cannot survive the strict scrutiny required for such viewpoint discrimination because it is not the most narrowly tailored method to achieve the government's interest in notifying the parents of the administration of the Act, an interest that is, in any case, not sufficiently compelling to infringe on students' free speech rights. Id. at 624. The court further ruled that Section 7-771(c)(1) violates the parents' fundamental liberty interest, under the Fourteenth Amendment, in the education of their children because it is not the least

restrictive means to advance the government's compelling interest to teach patriotism and civics. 270 F. Supp. 2d at 626-27. Finally, the court agreed with the plaintiffs' claim that Section 7-771(c)(1) unconstitutionally interferes with the school plaintiffs' ability to express their values and forces them to espouse the Commonwealth's views. 270 F. Supp. 2d at 627-29.

The end result of the District Court's decision is that Section 7-771(c)(1) is unconstitutional on its face. Moreover, although the court found Section 7-771(c)(2) to be a proper exercise of government power under the First Amendment Establishment Clause, it also found that the section has no independent force in the absence of Section 7-771(c)(1). 270 F. Supp. 2d at 631. The District Court therefore entered a permanent injunction prohibiting defendants from enforcing the Act.

Defendants now appeal the portion of the District Court's order granting summary judgment in favor of plaintiffs. As plaintiffs do not cross-appeal the District Court's rulings in favor of defendants, our review is limited solely to the three issues presented by defendants, representing the Commonwealth: whether the parental notification provision violates students' First Amendment free speech rights, whether the Act violates parents' Fourteenth Amendment fundamental liberty interest in choosing the educational method used to educate their children, and whether the Act violates the private schools' exercise of their rights in free

6

expressive association.

## JURISDICTION AND STANDARD OF REVIEW

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. The District Court had subject matter jurisdiction over the action under 28 U.S.C. §§ 1331, 1343. We have jurisdiction over the appeal under 28 U.S.C. § 1291.

This court exercises plenary review over the district court's decision to grant or deny summary judgment. "Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 229 F.3d 435, 441 n.3 (3d Cir. 2000).

## DISCUSSION

A. Whether the parental notification clause of Section 7-771(c)(1) constitutes viewpoint discrimination in violation of the First Amendment

In Tinker v. Des Moines Indep. Comty. Sch. Dist., 393 U.S. 503 (1969), the Supreme Court stated the well-known principle that "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Id. at 506.

As the first part of the quoted language makes clear, however, the First Amendment's guarantee of "wide freedom in matters of adult public discourse" does not mean that the First Amendment rights of students in the public schools are "automatically coextensive with the rights of adults in others settings." Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986). For example, the Court ruled in Fraser that a student may be disciplined for having delivered a speech that was sexually explicit, but not legally obscene, at a school assembly. Id. at 685-86. The Court also ruled in Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260 (1988), that a high school principal may delete materials that he found objectionable from the student-run school newspaper, as "[a] school need not tolerate student speech that is inconsistent with its basic educational mission." Id. at 268 (citation and internal quotation omitted). More recently, we have held that a school's prohibition of language threatening violence or use of force, and suspension of a kindergarten student for uttering such language during recess in the school yard, did not violate the student's First Amendment rights. S.G. ex rel. A.G. v. Sayreville Bd. of Educ., 333 F.3d 417 (3d Cir. 2003).

This careful balance between the First Amendment rights of students and the special needs of the state in ensuring proper educational standards and curriculum is demonstrated by the line of cases beginning with West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943), in which the Supreme Court

7

upheld a district court's injunction against the enforcement of a state board of education resolution requiring public school students to salute the national flag and punishing a student's refusal to salute the flag as an act of insubordination qualifying such student for expulsion. See also Lipps v. Morris, 579 F.2d 834, 836 (3d Cir. 1978) (ruling that a state statute requiring students to stand during recitations of the Pledge of Allegiance was an unconstitutional compulsion of expression). Noting that "the compulsory flag salute and pledge requires affirmation of a belief and an attitude of mind," 319 U.S. at 633, the Barnette Court viewed the board of education's resolution as a conflict "between authority and rights of the individual," with "[t]he State assert[ing] power to condition access to public education on making a prescribed sign and profession and at the same time to coerce attendance by punishing both parent and child." Id. at 630-31. While the Barnette Court concluded that government officials are forbidden under the Constitution to compel or coerce students to salute the national flag or recite the Pledge of Allegiance, id. at 642, the Court has subsequently found state and local regulations offering the Pledge of Allegiance, but permitting students to abstain from the recitation, as "[c]onsistent with our case law." Elk Grove Unified Sch. Dist. v. Newdow, 124 S. Ct. 2301, 2306 (2004) (citing Barnette).

It is therefore in this context of constrained, but not complete absence of, First Amendment rights for students in public schools that we examine the Commonwealth's interest in the parental notification clause of Section 7-771(c)(1). The Commonwealth contends that the Act, with the student opt-out clause and the parental notification mechanism, represents a proper balance between the students' right to freedom of speech and the Commonwealth's (and some parents') interest in the proper instruction of patriotic and civic values in all schools that "does not function to punish or discourage students' activities based upon the viewpoints that they choose to express." Appellants' Br. at 17. They further assert that "[w]hile notification provisions may at times appear punitive," the purpose of the notification system, as designed in the Act, "simply serves an administrative function, designed to efficiently inform all parents of an aspect of their children's education." Id.

In support of its argument for the constitutionality of the Act's parental notification scheme, the Commonwealth points to the parental notification requirements upheld by the Supreme Court in the context of abortions by minors. In H.L. v. Matheson, 450 U.S. 398 (1981), the Supreme Court held constitutional a state statute requiring physicians performing abortions to "[n]otify, if possible, the parents or guardian of the woman upon whom the abortion is to be performed, if she is a minor . . . ." Id. at 400 (citation and emphasis omitted). The Court, relying partly on Belotti v. Baird, 443 U.S. 622 (1979) (Belotti II), reasoned that the statute in question "gives neither

parents nor judges a veto power over the minor's abortion decision. . . . As applied to immature and dependent minors, the statute plainly serves the important considerations of family integrity and protecting adolescents which we identified in Belotti II. . . . [T]he statute [also] serves a significant state interest by providing an opportunity for parents to supply essential medical and other information to a physician." Matheson, 450 U.S. at 411; see also Belotti II, 443 U.S. at 640 (stating that "parental notice and consent are qualifications that typically may be imposed by the State on a minor's right to make important decisions. As immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, a State reasonably may determine that parental consultation often is desirable and in the best interest of the minor").

More recently, the Supreme Court has upheld parental notification requirements for abortions by minors, so long as there exists a judicial bypass mechanism for those requirements. Lambert v. Wicklund, 520 U.S. 292 (1997); Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502 (1990); see also Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992) (upholding parental consent requirement for abortion by minors based on the existence of a judicial bypass mechanism). Drawing from the balance between "the rights of a parent to control his or her child with a minor's right" that was involved in these abortion cases, the Commonwealth argues

that the Pennsylvania statute here, which merely provides for parental notification, is constitutional. Appellants' Br. at 18.

The Commonwealth's reliance on the abortion cases is fundamentally misplaced. Those decisions were rendered under a different provision of our Constitution, invoked a different set of competing interests and rights, and involved parental notification schemes that are differently structured. Not only are cases such as Matheson and Belotti II grounded on individuals' rights under the Due Process clause of the Fourteenth Amendment rather than the Free Speech clause of the First Amendment, but the interests involved in those cases–the maturity of the pregnant minor seeking abortion, the significant third-party effects such abortions may have, and the state's interest in protecting the fetus–are wholly different from the state's provision of proper educational curriculum and the students' right to be free from compelled expression. These are critical distinctions which the Supreme Court addressed in Barnette: "In weighing arguments of the parties it is important to distinguish between the due process clause of the Fourteenth Amendment as an instrument for transmitting the principles of the First Amendment and those cases in which it is applied for its own sake. . . . Much of the vagueness of the due process clause disappears when the specific prohibitions of the First become its standard." 319 U.S. at 639.

Returning to the First Amendment analysis of the parental notification clause,

9

we agree with the District Court that the notification requirement constitutes viewpoint discrimination that must survive strict scrutiny in order to be held constitutional. In <u>Barnette</u>, the Supreme Court stated:

> The freedom asserted by these appellees [Jehovah Witness students who refuse to recite the Pledge of Allegiance] does not bring them into collision with rights asserted by any other individual. It is such conflicts which most frequently require intervention of the State to determine where the rights of one end and those of another begin. But the refusal of these persons to participate in the ceremony does not interfere with or deny rights of others to do so. . . . The sole conflict is between authority and rights of the individual.319 U.S. at 630.[2]

When the imposition of such government authority is based on the content of the speech, such "[r]egulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." <u>Regan v. Time, Inc.</u>, 468 U.S. 641, 648-49 (1984). But when the regulations in question go beyond content discrimination and turn on the specific views expressed by a speaker, such "[v]iewpoint discrimination is [ ] an egregious form of content discrimination" and "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." <u>Rosenberger v. Rector & Visitors of the Univ. of Va.</u>, 515 U.S. 819, 829 (1995). As Justice Brennan pointed out, "[v]iewpoint discrimination is censorship in its purest form." <u>Perry Educ. Ass'n. v. Perry Local Educators Ass'n.</u>, 460 U.S. 37, 62 (1983) (Brennan, J., dissenting).

Pennsylvania's parental notification clause clearly discriminates among students based on the viewpoints they express; it is "only triggered when a student exercises his or her First Amendment right not to speak." 270 F. Supp. 2d at 623. A student's decision to recite the Pledge of Allegiance or the national anthem, and thereby adopt the specific expressive messages symbolized by such an act, does not trigger parental notification. On the other hand, a student's refusal to engage in the required recitation leads to a written notice to his or her parents or guardian, and possibly parental sanctions. As the District Court correctly pointed out, given that the

---

[2]    In a different context, we recently reiterated the principle that the First Amendment prevents the government from compelling individuals to express certain views. <u>See</u> <u>Cochran v. Veneman</u>, 359 F.3d 263, 267 (3d Cir. 2004).

purpose of the bill is to support the recitation of the Pledge of Allegiance or the national anthem in schools, a parental notification clause that is limited only to parents of students who refuse to engage in such recitation may have been purposefully drafted to "chill speech by providing a disincentive to opting out of Act."[3] Id. at 624. The Supreme Court has repeatedly stated that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 674 (1996) (quoting Laird v. Tatum, 408 U.S. 1, 11 (1972)); see Trotman v. Bd. of

---

[3]   The legislative history provides some evidence that such disincentive was indeed part of the Commonwealth's motivation in adopting the parental notification scheme. Representative Egolf, for example, suggested prior to the bill's passage that if a student refuses to recite the Pledge or the national anthem and the student's parents do want him or her to follow such recitation, the school may impose "whatever sanctions the school does for other disciplinary things." 270 F. Supp. 2d at 624. While the opinion of a single legislator made in the course of legislative debates is not dispositive for our adjudication of a fundamental constitutional question, the view of the legislator who introduced the bill sheds some light on its underlying motivation.

Trustees, 635 F.2d 216, 228 (3d Cir. 1980).

The Commonwealth, on the other hand, does not offer any convincing governmental interest which this parental notification scheme is designed to further. Its claims that "the parental notification system simply serves an administrative function, designed to efficiently inform all parents of an aspect of their children's education," and that "[p]resumably, less administrative resources would be expended informing the parents of those who declined to participate than informing all parents," are unpersuasive. Appellants' Br. at 17 & n.6. The administrative convenience argument appears makeweight. It appears just as likely, if not more likely, that notification to all the school's parents at one time, possibly along with other notices sent at the beginning of the school year, would actually conserve administrative resources. Instead, under the Act, teachers must watch for students who refuse to recite the Pledge of Allegiance, record their names, report them to the school administration and notify their parents individually.

Of more fundamental importance, the Commonwealth's stated interest of parental notification is simply not "so compelling of an interest" as to justify the viewpoint discrimination that significantly infringes students' First Amendment rights. 270 F. Supp. 2d at 624. We agree with the District Court that the parental notification clause of Section 7-771(c)(1) unconstitutionally treads on students' First Amendment rights.

11

The District Court ruled that Section 7-771(c)(1) "unconstitutionally interferes with the School Plaintiffs' ability to express their values and forces them to espouse the Commonwealth's views." 270 F. Supp. 2d at 629. Specifically, the court agreed with the school plaintiffs that Section 7-771(c)(1) "requires them to affirm and have their students affirm the Commonwealth's view on patriotism . . . impairing their ability to express certain values and philosophies which they wish to express. . . . [and] eliminat[ing] the ability of the students to make a choice, without coercion, whether to recite the Pledge or Anthem." App. at 17.

The freedom of expressive association received its most recent and extensive analysis in Boy Scouts of Am. v. Dale, 530 U.S. 640 (2000), where the Supreme Court held that the Boy Scouts could expel an assistant scoutmaster for his homosexuality, notwithstanding New Jersey's Law Against Discrimination, because the Boy Scouts engaged in "expressive association." Id. at 644. The inclusion of a homosexual in the organization, as the state law compelled, would therefore violate the First Amendment interest of the Boy Scouts. The Court stated that "[t]o determine whether a group is protected by the First Amendment's expressive associational right, we must determine whether the group engages in 'expressive association.'

. . . [T]o come within [the First Amendment's] ambit, a group must engage in some form of expression, whether it be public or private." Id. at 648.

Here, the record supports the holding of the District Court that the school plaintiffs engage in expressive association, as required by Dale. By nature, educational institutions are highly expressive organizations, as their philosophy and values are directly inculcated in their students. Each school plaintiff has shown that it possesses clear educational philosophies, missions and goals. App. at 56-71, 82-90. The Circle School's public mission statement includes the following: "[w]e believe in the wisdom of each person to know what's best for him or her," that "freedom to entertain ideas must be unbounded," and that "the child person is encouraged to explore widely . . . physically, intellectually, emotionally, socially, and spiritually" so that s/he may "grow[] in skills of perception and judgment." App. at 56-57. Project Learn, similarly, states that "the educational program must provide the opportunity for children to share in the planning and directing of the learning experience," and "[t]he final choice must always be the child's to participate in an activity or not . . . the teacher's responsibility is to help the child to see clearly the choices available and the possible consequences of particular choices." App. at 66. Section 7-771(c), by requiring all schools to offer recitations of the Pledge of Allegiance or the national anthem to students every morning,

12

substantially burdens the schools' mission of "freedom of choices."

In this regard, the only defense offered by the Commonwealth on Section 7-771(c)'s constitutionality is that the Pledge is "only thirty-one (31) words," the anthem is "eighty (80) words," the recitation only takes "a very short period of time each day," and "the private schools [can] make a general disclaimer" regarding the recitation. Appellants' Br. at 27-28. Certainly, the temporal duration of a burden on First Amendment rights is not determinative of whether there is a constitutional violation, especially when the burden imposed by the state carries a clear and powerful message that is to be disseminated every school day. Similarly, the fact that the schools can issue a general disclaimer along with the recitation does not erase the First Amendment infringement at issue here, for the schools are still compelled to speak the Commonwealth's message. Otherwise the state may infringe on anyone's First Amendment interest at will, so long as the mechanism of such infringement allows the speaker to issue a general disclaimer. Such an idea is contrary to the First Amendment's plain language.

As we find that Section 7-771(c) infringes on the school plaintiffs' First Amendment associational rights, we must examine whether it survives strict scrutiny. We do not question that the Commonwealth's asserted interest of teaching patriotism and civics in all schools is compelling, but the Act is neither narrowly tailored nor the least restrictive mean of achieving that interest. Pennsylvania law requires that all schools teach civics, as well as a variety of other subject matters. 24 Pa. Cons. Stat. Ann. § 15-1511. Under that statute, each school may select the method to satisfy that requirement, which need not be by the rote recitation of prescribed words. The latter, which is mandated by Section 7-771(c), is therefore not the least restrictive method for achieving the Commonwealth's goal. It follows that Section 7-771(c) violates the school plaintiffs' First Amendment right to freedom of association.

C. Whether Section 7-771(c)(1) violates the parent plaintiffs' fundamental liberty interest in the education of their children

Finally, plaintiffs argue that the Act violates the student parents' fundamental liberty interest, under the Fourteenth Amendment, in the education of their children. Specifically, they assert that "[t]he Act . . . infringes on the rights of parents of [students enrolled in plaintiff private schools] to choose the manner in which to educate their children by imposing restrictions unrelated to legitimate educational concerns, including but not limited to the requirement that non-religious private schools begin each day with a recitation of the Pledge of Allegiance or National Anthem as well as the requirement contained in the Parental Notification Provision." App. at 43-44. They rely on Meyer v. Nebraska, 262 U.S. 390 (1923), where a plurality of the Court held unconstitutional a statute prohibiting teaching in German, and Pierce v. Soc'y of

13

the Sisters, 268 U.S. 510 (1925), where the Court invalidated a state statute requiring all children to attend public schools instead of private schools. The Commonwealth, however, contends that because "[n]o student is compelled to participate in the recitation of the Pledge of Allegiance or the National Anthem since any student has the right to excuse themselves based on religious conviction or personal belief" and "parents retain the right, if they so choose, to counsel their children (a) to adopt a religious or personal belief system which is inconsistent with the recitation of the [Pledge or anthem] and (b) to exercise their rights to opt out of participating in the recitation of the [Pledge or Anthem]," the Act does not violate the Fourteenth Amendment. Appellants' Br. at 25-26. The District Court, using reasoning similar to that it used in its First Amendment rulings, upheld the parents' claim.

In light of our holding that the Act violates the First Amendment rights of school students and private schools and is therefore unconstitutional, we need not reach Plaintiffs' Fourteenth Amendment claim and will therefore not address it here.

### CONCLUSION

It may be useful to note our belief that most citizens of the United States willingly recite the Pledge of Allegiance and proudly sing the national anthem. But the rights embodied in the Constitution, most particularly in the First Amendment, protect the minority – those persons who march to their own drummers. It is they who need the protection afforded by the Constitution and it is the responsibility of federal judges to ensure that protection.

For the reasons set forth in this opinion, we will affirm the District Court's order.